**AKERMAN LLP**
Evelina Gentry (SBN 296796)
evelina.gentry@akerman.com
Jonathan M. Turner (SBN 320614)
jonathan.turner@akerman.com
633 W. Fifth Street, Suite 6400
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Samual A. Miller (*Pro Hac Vice* application forthcoming)
samual.miller@akerman.com
420 South Orange Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 423-4000
Facsimile: (407) 843-6610

*Attorneys for Plaintiff*
CHEP USA

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEP USA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SOSA PALLETS and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: 5:24-cv-0577<br><br>Assigned to: _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, RECOVERY AND POSSESSION OF PERSONAL PROPERTY, CONVERSION, VIOLATION OF CALIFORNIA PENAL CODE SECTION 496, AND OTHER RELIEF** |

Plaintiff CHEP USA ("CHEP" or "Plaintiff"), respectfully files this Complaint against Sosa Pallets ("Sosa" or "Defendant").

## PARTIES

1. Plaintiff CHEP USA is a New York partnership with a principal place of business at 5897 Windward Parkway, Alpharetta, Georgia 30005. The partners of CHEP USA are Brambles North America Incorporated and Brambles Industries, LLC. Brambles North America Incorporated is a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. Brambles Industries, LLC is a Delaware LLC with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. The sole member of Brambles Industries, LLC is Brambles North America Incorporated, a Delaware Corporation with its principal office at 5897 Windward Parkway, Alpharetta, Georgia 30005. CHEP is thus a citizen of the State of Delaware and a citizen of the State of Georgia for purposes of 28 U.S.C. § 1332(a).

2. According to Sosa's website (https://www.sosapallets.com/), Sosa is owned and operated by Mario Sosa and Maria Sosa, with a facility address of 19744 El Rivino Road, Riverside, California 92509, and a mailing address of P.O. Box 315, Bloomington, California 92316. Upon information and belief, Sosa also operates out of a facility located in Fontana, California. Further upon information and belief, and after a diligent search, Sosa is not registered to do business with the California Secretary of State. Sosa is thus a citizen of the State of California for purposes of 28 U.S.C. § 1332(a).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. CHEP seeks to recover the value of each of CHEP's pallets that Defendant has (i) improperly retained, (ii) transferred to another individual or entity or (iii) permanently lost, sold, or destroyed beyond repair. Based on CHEP's limited observations, Defendant improperly took control of several thousand CHEP pallets, each with a current approximate replacement cost of $35.00 each. CHEP does not currently have knowledge of the number of CHEP's pallets that have been transferred or destroyed by Defendant, as such details are expected to be exclusively in Defendant's possession, custody, or control. Given that Defendant has wrongfully sold or transferred thousands of CHEP Pallets since at least May of 2021, the aggregated amount of CHEP's damages well exceeds the $75,000 threshold for federal court jurisdiction.

5. This Court has personal jurisdiction of Sosa because (i) Sosa resides in California, (ii) Sosa maintains and operates its principal place of business in California, (iii) the causes of action asserted herein accrued in California, and (iv) the CHEP pallets at issue in this action are located in California.

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because (i) Defendant resides in this judicial district, (ii) a substantial part of the events or omissions giving right to CHEP's claims occurred in this judicial district, (iii) the property at issue in this action is currently located in Riverside, California, which is within this judicial district.

7. All conditions precedent to bringing this action have been performed or have occurred.

## FACTUAL BACKGROUND

### Pallets and Commerce

8. Typically, wooden pallets are used for the purpose of hauling, loading and unloading, and storing goods as those goods move in commerce from their manufacturers to distributors to wholesalers and finally to retailers, where they are made available for purchase by the average consumer.

9. In general, the majority of pallets circulating in the United States are common white pine pallets that come in varying shapes, sizes and level of quality and bear no trademarks or names. These pallets, bearing no coloring or demarcation, are often called white wood pallets.

10. In general, these pallets are bought by manufacturers who place their product on these wooden pallets. The manufacturers then sell their product, along with the white wood pallet, to their distributors. The distributors then re-use these white wood pallets and sell the excess to pallet dealers or recyclers, who may repair the pallets and resell them to those in need of pallets, mulch the pallets, or otherwise dispose of them.

11. The strength of a pallet is crucial to its usefulness. Pallets that are not adequately inspected and maintained are prone to breakage because of the constant handling by manufacturers, distributors, and retailers. Such breakage often results in damage to the goods being transported and, at times, injuries to the individuals working with or around the pallet.

### CHEP Pallets

12. CHEP offers a better option for the pallet needs of manufacturers, distributors, and retailers.

13. Instead of purchasing new or recycled pallets for each shipment, manufacturers can lease pallets from CHEP as part of a national pallet pool. CHEP, which operates over 150 CHEP service centers across the United States, leases its pallets pursuant to its form pallet Rental Agreement.

14. Through CHEP's national pallet pool, manufacturers receive and ship products on uniform, high quality pallets owned and maintained by CHEP, and the pallets, after being inspected and repaired (if necessary), are used over and over again by the manufacturers to ship their products.

15. CHEP has invested significant resources, in time and money, in maintaining superior, reliable and safe pallets.

16. The CHEP pallet pool rental system involves the shared use of high-quality pallets by multiple customers or users. Although there are variations, the following is a general explanation of how the system works. CHEP leases its pallets to manufacturers who use the CHEP pallets as a platform for the transportation of goods to their distributors and retailers. The distributors and retailers in turn use the CHEP pallets within their distribution system and stores until the original manufacturer's product is emptied from the pallet. The empty pallets are then set aside for return to or collection by CHEP. At CHEP's service centers across the country, the empty CHEP pallets are inspected, cleaned, repaired and/or repainted (if necessary), and then sent back to manufacturers to repeat the cycle again.

17. CHEP's unique system, where high quality pallets are constantly maintained, controlled, tracked and reused, benefits the entire supply chain. Manufacturers receive consistent, high quality pallets, reduced pallet expense, reduced transportation costs and reduced product damage. Distributors and retailers benefit from faster loading and unloading, reduced product damage and reduced pallet expense.

18. Importantly, the consistent high quality of CHEP's pallets significantly reduces the number of accidents caused by faulty or damaged pallets. Safety is improved at all levels from the manufacturer's plant to the distribution center to the retail store.

19. CHEP's system also removes costs and environmental burdens associated with waste disposal. CHEP estimates that its pallet program saves more than two million tons of solid waste each year. CHEP pallet materials that are no longer usable are mostly recycled into mulch for uses such as animal bedding and industrial sweeping compounds.

20. Given these benefits, it is not surprising that CHEP's pallet pool has been popular with manufacturers, distributors, and retailers. CHEP continues to invest tens of millions of dollars a year to maintain and supplement its pallet pool.

21. **CHEP never sells its pallets**. The success – indeed the existence – of CHEP's pallet pool rests on the fundamental principle that CHEP maintains ownership over all of its pallets, which permits CHEP to inspect its pallets regularly to ensure that they continue to meet CHEP's high and consistent quality and strength standards.

22. CHEP's agreements *expressly* provide that CHEP owns the CHEP pallets and that the CHEP pallets may never be bought and sold. All CHEP pallets are painted blue on their sides, are inscribed with CHEP's logo, and bear the words "PROPERTY OF CHEP." Many CHEP pallets also bear the company's toll-free telephone number.

23. CHEP always retains absolute ownership of all of its pallets.

24. The leasing process begins with CHEP entering into an agreement with a manufacturer of goods in need of pallets.

25. In order to retain control and dominion over its pallets, CHEP also enters into pallet retention and return agreements with downstream commercial entities, such as distributors and retailers. Before a lessee can ship its product on a CHEP pallet to a downstream entity, it must first obtain approval from CHEP, or must know that the downstream entity is already a customer of CHEP or authorized user of CHEP pallets.

26. CHEP typically charges its lessees a pallet rental fee on each CHEP pallet within the lessee's possession. In this manner, CHEP has created a "leasing pool" of CHEP pallets.

27. CHEP makes a concerted effort to track the flow of its pallets. A large number of CHEP employees are dedicated in whole or in part to the protection, recovery, and retrieval of pallets, including logistics managers and coordinators, asset recovery managers and representatives, and office-based analysts and administrative personnel. In particularly egregious cases (such as this one), CHEP pursues legal action, both in cooperation with governmental enforcement authorities and independently, to protect, recover and retrieve its pallets. In visiting an entity with which it does not have a contractual relationship, such as a recycler, CHEP will make overtures to that entity to

consider entering into an agreement with CHEP. Inevitably and unfortunately, CHEP is unable to recover all of its pallets.

28. The approximate cost to manufacture a CHEP pallet is currently $35.

## Defendant's Wrongful Possession of CHEP Pallets

29. Based on CHEP's observations, CHEP is informed and believes and thereon alleges the following: Defendant is in the business of used-pallet collection, recycling, repair or destruction, and reselling. Defendant does not make an effort to avoid collecting CHEP pallets and, upon information and observation, actively collects CHEP pallets for Defendant's business operations.

30. On May 13, 2021, CHEP representatives visited Defendant's facility located in Fontana California after CHEP was informed by Arch EBusiness International that Arch EBusiness International had wrongfully acquired CHEP pallets by purchasing them from Defendant. CHEP representatives confirmed that Arch EBusiness International was a customer of Defendant and informed Defendant's owner, Mario Sosa, that it was unlawful for anyone to buy, sell, alter, trade or destroy CHEP pallets and told him to immediately cease all sales of CHEP pallets. While speaking with Mario Sosa and his son Richard, CHEP representatives observed a van trailer with thirteen by eighteen stacks of CHEP pallets. Richard Sosa informed CHEP representatives that they needed to speak with his sister, Maria.

31. On May 14, 2021, a CHEP representative spoke with Maria Sosa and informed her that Defendant's acquisition and sale of CHEP pallets was illegal, which she denied. The CHEP representative also advised Maria Sosa that Sosa needed to provide replacement pallets to Arch EBusiness and that Defendant needed to return the thirteen CHEP pallet stacks that were observed on Arch EBusiness's premises. Maria Sosa indicated that she would return the wrongfully acquired CHEP pallets the following weekend but failed to do so. The following Monday, CHEP representatives once again visited Defendant and observed the thirteen stacks of CHEP pallets on the

premises. Maria Sosa stated that she would attempt to deliver the pallets to CHEP that week. Defendant failed to return CHEP's pallets.

32. On or about August 30, 2021, CHEP was informed that Dorji, Inc. wrongfully acquired CHEP pallets by purchasing them from Defendant. On October 4, 2021, CHEP representatives visited Dorji, Inc. and recovered approximately one hundred (100) CHEP pallets. On October 5, 2021, CHEP returned to Dorji, Inc. and recovered ninety (90) additional CHEP pallets. By October 11, 2021, CHEP had successfully recovered two hundred twenty-one (221) of its pallets from Dorji, Inc., with approximately seven hundred fifty (750) CHEP pallets remaining.

33. On October 14, 2021, CHEP representatives visited Defendant and observed Defendant's employees load a truck trailer full of CHEP pallets.

34. On October 15, 2021, CHEP representatives watched Defendant load pre-staged pallets in Defendant's yard and noticed stacks of CHEP pallets at least sixteen or seventeen pallets high. In addition, CHEP representatives observed a truck loading a trailer full of CHEP pallets from Defendant's premises. CHEP's representatives also observed Defendant loading two additional box bobtail trucks with additional CHEP pallets from the same staging area.

35. On November 30, 2021, CHEP's representatives visited Dorji, Inc. and spoke with its representative, who indicated that Dorji, Inc. had approximately two hundred (200) of seven hundred fifty (750) CHEP pallets available for pickup. On December 20, 2021, CHEP recovered one hundred twenty (120) of the seven hundred fifty (750) CHEP pallets from Dorji, Inc., leaving a balance of six hundred thirty (630) CHEP pallets. On January 12, 2022, CHEP representatives once again spoke with Dorji, Inc. regarding the outstanding balance of six hundred thirty (630) CHEP pallets that CHEP needed to recover.

36. On February 21, 2022, CHEP's representatives spoke with Dorji, Inc.'s representative who indicated that they would have sixty (60) to eighty (80) CHEP pallets ready for pickup on February 28, 2022. On February 28, 2022, Dorji, Inc.'s

representative provided CHEP's representatives with an invoice reflecting its purchase of over five hundred (500) CHEP pallets from Defendant.

37. On February 16, 2022, CHEP representatives visited Defendant to investigate its possible sales of CHEP pallets. While at Defendant's location, CHEP's representatives observed Defendant loading CHEP pallets into a truck with Mexico decals. The truck belonged to De Anda Trucking, LLC. The truck driver informed CHEP's representatives that Defendant hired De Anda Trucking to transport full loads of at least five hundred (500) CHEP pallets across the border into Mexico twice a week for at least three months.

38. CHEP's representatives filed a grand theft crime report with the San Bernardino Sheriff's Department. The Sheriff's Department spoke with the son of the owner of Defendant, Rufino Cabrera and the driver of the truck, Mario Lara. Based on the information received from De Anda Trucking, CHEP lost over twenty-four thousand (24,000) of its pallets during the three (3) months that Defendant illegally transported (and apparently sold) its pallets across the border. Moreover, it is likely that Defendant has been illegally converting and smuggling CHEP's pallets across the Mexico border and selling CHEP's pallets for much longer than merely three (3) months.

39. With the permission of Rufino Cabrera, CHEP was able to recover 1,512 CHEP pallets from Defendant. However, there are at least 240 CHEP pallets remaining at Defendant's Riverside location. CHEP has demanded that Defendant return CHEP's pallets, explaining that it was unlawful for anyone to buy, sell, alter, trade or destroy CHEP pallets.

40. To date, Defendant has refused to allow the recovery of CHEP-owned property.

41. On information, belief, and observation, Defendant is systematically converting, smuggling, selling CHEP pallets as quickly as it is obtaining the pallets such that Defendant rarely possesses a substantial number of pallets.

# COUNT I

## DECLARATORY JUDGMENT

42. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

43. This is a claim for declaratory judgment pursuant to Section 2201 *et seq.* of title 28 of the United States Code.

44. CHEP avers that CHEP pallets are owned by CHEP, that CHEP pallets are solely and exclusively CHEP's property, and that Defendant does not have any ownership, possessory, or other rights to the CHEP pallets.

45. However, Defendant takes the position that it owns and/or has the right to possess or exercise ownership, control, and dominion over the CHEP pallets.

46. Accordingly, an actual controversy exists between CHEP and Defendant relating to their legal rights and duties arising out of the main action. A declaration of rights and duties as to the responsibilities of CHEP and Defendant is appropriate at this time in order to permit CHEP to ascertain its rights and duties with respect to CHEP pallets.

47. In light of the foregoing, CHEP is entitled to the declaratory relief sought herein because, *inter alia*, (i) there is a present and actual controversy based upon the facts alleged above; (ii) CHEP's rights are dependent upon the facts alleged above; (iii) Defendant has an actual, present, adverse, and antagonistic interest in this matter; (iv) all antagonistic and adverse interests are before the Court by proper process; and (v) the issues raised by CHEP are not propounded from curiosity and the relief sought is not merely the rendering of legal advice by the Court; there is a *bona fide* need for a declaration based on present, ascertainable facts.

48. CHEP has suffered and/or faces an actual or imminent injury in fact that is traceable to the Defendant's wrongful conduct, which is likely to be redressed by a favorable decision; absent the issuance of declaratory relief, CHEP will be irreparably injured.

49. In sum, CHEP is entitled to a judgment declaring that CHEP has sole and exclusive ownership over the CHEP pallets, and awarding CHEP such other supplemental relief, including injunctive relief and a writ of possession, as the Court deems just and proper.

## COUNT II

### RECOVERY AND POSSESSION OF PERSONAL PROPERTY

50. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

51. This is an action for, among other things, the issuance of a writ of possession pursuant to the California Code of Civil Procedure Section 512 *et seq.* to recover all CHEP pallets in Defendant's custody, possession or control.

52. CHEP respectfully submits that CHEP is entitled to have the CHEP pallets seized and recovered in accordance with law.

53. CHEP respectfully submits that the writ of possession should be issued without bond because Defendant has no interest in CHEP's pallets.

## COUNT III

### CONVERSION

54. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

55. At the time Defendant came into possession of the CHEP pallets, Defendant did not own the CHEP pallets and did not have any right to possess the CHEP pallets.

56. Defendant has taken the CHEP pallets and continues to exercise ownership, dominion, and control over those CHEP pallets despite being on notice that Defendant does not have any ownership rights with respect to the CHEP pallets and does not have any right to possess the CHEP pallets.

57. Defendant's actions are inconsistent with CHEP's ownership of the CHEP pallets.

58. CHEP has been damaged by Defendant's continued actions with respect to the CHEP pallets, including but not limited to Defendant's wrongful possession and wrongful transfers of the CHEP pallets.

59. Based on the foregoing, CHEP respectfully requests a money judgment in its favor and against Defendant in the amount of damages suffered as a result of Defendant's wrongful actions as well as any interest arising therefrom.

## COUNT IV

## VIOLATION OF CALIFORNIA PENAL CODE SECTION 496

60. 76. CHEP restates, adopts, and incorporates each and every allegation in the preceding and foregoing paragraphs.

61. CHEP seeks to recover damages based upon Section 496, Subdivision (c) of the California Penal Code.

62. Penal Code Section 496(c) provides that any person injured by a violation of Penal Code Section 496(a) may bring an action for three times the amount of actual damages sustained by the plaintiff, as well as reasonable attorneys' fees and costs.

63. Every person who buys or receives any property that has been stolen or has been obtained in any manner constituting theft, knowing that the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, is guilty of violating Penal Code Section 496(a).

64. Defendant has wrongfully obtained possession of CHEP's pallets through conduct that constitutes theft and conversion under Penal Code Section 496 and continues to withhold and conceal CHEP's pallets and information in relation thereto from CHEP. Specifically, Defendant (i) purchased or received CHEP's pallets, which had been stolen or obtained by theft; (ii) sold or aided in selling CHEP's pallets, which had been stolen or obtained by theft; and (iii) concealed and withheld, and aided in concealing and withholding, CHEP's pallets from CHEP, which had been stolen or obtained by theft.

65. At all relevant times, Defendant had actual knowledge that the CHEP Pallets were stolen or obtained by theft at the time Defendant purchased, received, withheld, sold, aided in concealing and withholding, CHEP's pallets. Defendant's actual knowledge of its possession and purchase of stolen property is evidenced by, among other things, Defendant's numerous misrepresentations as to (i) the owner of Defendant; (ii) where and from whom Defendant purchased the CHEP Pallets at issue, including misrepresentations as to the phone number and identity of purported entity that sold the CHEP Pallets to Defendant; (iii) Defendant's purported payment for the CHEP Pallets at issue, including its refusal to provide any invoices for such purchases; and (iv) Defendant's refusal to allow CHEP representatives to further inspect Defendant's premises to locate additional CHEP Pallets.

66. Defendant's concealment and withholding of CHEP's pallets is evidenced by Defendant's (i) refusal to identify the seller of the CHEP Pallets in Defendant's possession and (ii) refusal to provide any proof of purchase of the CHEP Pallets in Defendant's possession.

67. As detailed above, on numerous occasions, CHEP explained to Defendant that the pallets at issue are owned by CHEP and demanded that Defendant return the CHEP Pallets in Defendant's possession to CHEP. Defendant refused to deliver possession of the CHEP Pallets at issue, or any part thereof, to CHEP. Upon information and belief, Defendant continues to buy, sell, or otherwise dispose of what is knows pallets stolen from CHEP.

68. Defendant's violation of Penal Code Section 496(a) caused CHEP to suffer injury, damage, loss or harm. Specifically, as a direct and proximate result of Defendant's conduct, CHEP has been denied the use and possession of its property and has been damaged in an amount to be proven at trial, but an amount that exceeds $75,000.

85. CHEP has been damaged due to Defendant's receipt and possession of CHEP's pallets and, pursuant to Penal Code Section 496(c), is entitled to recover three

times the amount of its actual damages and an award of reasonable costs and attorneys' fees incurred in bringing this action.

## PRAYER

WHEREFORE, CHEP respectfully prays that this Court:

A. On Count I:

  a. Enter a judgment declaring that CHEP has sole and exclusive ownership over the CHEP Pallets and that Defendant does not have any ownership, possessory, or any other rights with respect to the CHEP pallets.

  b. Granting a permanent injunction enjoining Defendant and its officers, directors, owners, employees and agents from buying, selling, using, destroying, or possessing CHEP pallets

B. On Count II:

  a. Enter a judgment directing that the CHEP Pallets in the possession, custody, or control of Defendant be immediately turned over, delivered to, and/or put in possession of CHEP.

  b. Issue a writ of possession, without the necessity of a bond (or a nominal bond if the Court determines a bond is necessary) directing that the CHEP Pallets in the possession, custody, or control of Defendant be seized and sequestered pending the resolution of this action in accordance with the law, with CHEP being named keeper of the pallets.

C. On Count III:

  a. Enter a money judgment in favor of CHEP and against Defendant in the amount of general and consequential damages, including lost profits, suffered as a result of Defendant's wrongful conversion and other actions related to the CHEP Pallets.

D. On Count IV:

    a. Enter a money judgment in favor of CHEP and against Defendant for treble damages, costs of suit, and reasonable attorneys' fees as a result of Defendant's violation of California Penal Code Section 496.

E. On all Counts:

    a. Enter a judgment in favor of CHEP and against Defendant for all fees incurred in bringing and relating to this action; all interest accrued on the amounts owed by Defendant; and any and all other monetary or equitable relief that this Court deems just and proper under applicable law.

    b. Issue such relief as the Court deems just and proper.

DATED: March 19, 2024

**AKERMAN LLP**

By: _____
Evelina Gentry
Jonathan M. Turner
Samual Miller

*Attorneys for Plaintiff*
*CHEP USA*